IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ALMA BRIGHTLEAF, INC. | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION NO. CV511-91 |
| FEDERAL CROP INSURANCE CORPORATION, | * |
| Defendant. | * |

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2011 SEP -7 P 4:31
CLERK_____
SO. DIST. OF GA.

## COMPLAINT

COMES NOW the Plaintiff, Alma Brightleaf, Inc., and files this Complaint and shows as follows:

### CERTIFICATE OF INTERESTED PERSONS

Pursuant to Local Rule 3.2, counsel for plaintiff certifies that the following is a full and complete list of all parties in this action:

Alma Brightleaf, Inc., Plaintiff

Federal Crop Insurance Corporation, Defendant

The undersigned further certifies that the following is a full and complete list of officers, directors, or trustees of the above-identified parties:

Julian A. Rigby, Sole stockholder of Plaintiff

The undersigned further certifies that the following is a full and complete list of other persons, firms, partnerships, corporations, or organizations that have a financial interest in, or another interest which could be substantially affected by the outcome of this case (including a relationship as a parent of holding company or similar relationship):

None known.

1

1. Plaintiff is a corporation organized under the laws of the State of Georgia.

2. Defendant Federal Crop Insurance Corporation (hereafter "FCIC") is an agency of and within the United States Department of Agriculture. It is also a corporation established pursuant to 7 U.S.C. Section 1503, with principal offices of the corporation located in the District of Columbia. This Court has personal jurisdiction over FCIC.

3. This Court has subject-matter jurisdiction pursuant to 7 U.S.C. Section 1501 et. seq. (hereafter the "Federal Crop Insurance Act,") including but not limited to 7 U.S.C. Section 1506(d).

4. Venue is proper in the Southern District of Georgia pursuant to 7 U.S.C. Section 1508(j)(2)(A) because the insured farms are located in this district.

5. Plaintiff had a farming operation in 2008 that included 116.24 acres of tobacco on Unit 129 of Farm Serial Number 2369 and 38.08 acres of tobacco on Unit 133 of Farm Serial Number 3531. Plaintiff obtained crop insurance covering both these Units, and FCIC resinsured those Units under a standard reinsurance agreement.

6. Plaintiff incurred a loss on both Units in 2008 and applied for indemnities. A regional RMA director notified Plaintiff by letter dated April 13, 2009 that indemnities would not be paid.

7. Plaintiff then requested an administrative review of the denial of indemnities as to both Units. That administrative review was exhausted on September 8, 2010 by a Director Review Determination. A letter accompanying that determination states that "[t]he enclosed determination is a final order of the Department of Agriculture and concludes all administrative processing of your appeal." Copies of the letter and the determination are attached as Exhibit A and are incorporated herein by reference.

8. The adverse decision is unsupported by substantial evidence. Further, the decision is also erroneous, arbitrary, and capricious. Finally, the decision is not in accordance with existing law.

9. Plaintiff has sustained an insurable loss on Units 129 and 133 and is entitled to indemnities as to both Units, plus interest.

WHEREFORE, Plaintiff demands:

(a) That the Court review the adverse decision and find that the decision is not supported by substantial evidence, is erroneous, arbitrary and capricious, and is not in accordance with existing law;

(b) That the Court issue a judgment reversing the final decision of the Director; and

(c) That the Court grant such other relief as it deems proper.

Respectfully submitted this 7th day of September, 2011.

_____
David McCrea
Attorney for Plaintiff
P.O. Box 412
Alma, GA  31510
(912) 632-0030
GA Bar No. 486850



**UNITED STATES DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY
NATIONAL APPEALS DIVISION**

SEP 0 8 2010

David McCrea, Esq.
P.O. Box 412
Alma, GA 31510

Re: NAD Case No. 2010S000321

Dear Mr. McCrea:

Enclosed is a copy of my Director Review Determination that addresses the matters raised in the Request for Review that you filed on behalf of your client, Alma Brightleaf, Inc., in the above-captioned case. As explained in the enclosure, after considering the arguments and other matters in the review, I have affirmed in part, and reversed in part, the Hearing Officer's determination.

The enclosed determination is a final order of the Department of Agriculture and concludes all administrative processing of your appeal.

Sincerely,

M. Terry Johnson
Deputy Director

Enclosure



**UNITED STATES DEPARTMENT OF AGRICULTURE**
**OFFICE OF THE SECRETARY**
**NATIONAL APPEALS DIVISION**

Risk Management Agency
William J. Murphy, Administrator
1400 Independence Avenue, SW
South Building, AG Stop 0806
Room 6092-S, Mail Stop 0801
Washington, DC 20250

SEP 0 8 2010

Re: NAD Case No. 2010S000321

Dear Mr. Murphy:

Enclosed is a copy of my Director Review Determination that addresses the matters raised in the Request for Review that you filed in the above-captioned case. As explained in the enclosure, after considering the arguments and other matters in the review, I have affirmed in part, and reversed in part, the Hearing Officer's determination.

The enclosed determination is a final order of the Department of Agriculture and concludes all administrative processing of this appeal.

Sincerely,

M. Terry Johnson
Deputy Director

Enclosure



**UNITED STATES DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY
NATIONAL APPEALS DIVISION**

# DIRECTOR REVIEW DETERMINATION

|  |  |  |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| ALMA BRIGHTLEAF, INC. | ) | Case No. 2010S000321 |
| | ) | |
| and | ) | |
| | ). | |
| RISK MANAGEMENT AGENCY | ) | |

On June 1, 2010, and June 24, 2010, Risk Management Agency (RMA/Agency) and Alma Brightleaf, Inc. (Appellant) filed requests for Director Review of a National Appeals Division (NAD) Hearing Officer determination that was issued on May 10, 2010. The Hearing Officer affirmed in part and reversed in part an RMA adverse decision, dated December 23, 2009, that denied Appellant's request for crop insurance indemnities on Unit 129 of Farm Serial Number (FSN) 2369 (Unit 129) and Unit 133 of FSN 3531 (Unit 133) (collectively the Units). Specifically, the Hearing Officer affirmed RMA's decision that Appellant did not timely file a notice of loss on the Units for tornado damage, and that Unit 133 was not damaged by Tropical Storm Fay (tropical storm). The Hearing Officer reversed RMA's decision denying Appellant's claim on Unit 129 for damage from the tropical storm.

I uphold the Hearing Officer's determination that Appellant did not timely file a notice of loss on the Units for tornado damage, and that Unit 133 was not damaged by the tropical storm. I reverse the Hearing Officer's determination that the tropical storm damaged Unit 129. In arriving at this decision, I have reviewed the applicable laws and regulations; the case record (CR), including the pre-hearing recording and the Hearing Officer's determination; the requests for Director Review filed by the parties; and Appellant's response to RMA's request for Director Review.

## Issues in This Case

The dispute in this case is whether RMA erred in denying Appellant's request for crop insurance indemnities on the Units for tornado damage. In resolving this dispute, I must answer the following:

> (1) Did Appellant notify Producers Agriculture Insurance (Insurer), by telephone or in person, within 72 hours of initially discovering the tornado damage?

(2) Did Appellant confirm the notice of loss in writing within 15 days?

## Background

Appellant is located in Georgia and is owned by Julian Rigby (Owner). In 2008, the farming operation included 116.24 acres of tobacco on Unit 129 and 38.08 acres of tobacco on Unit 133. The tobacco was covered by a crop insurance policy that first was obtained in 2004 from Insurer, who had a standard reinsurance agreement with the Federal Crop Insurance Corporation (FCIC). File 2, Tab 15, Agency Record, Pages 30-31; File 4, Tab 15, Agency Record, Page 369.

On July 28, 2008, a tornado occurred in the area where Appellant is located. File 4, Tab 15, Agency Record, Page 313; File 1, Tab 7, Hearing Officer Determination, Finding of Fact 3. According to Owner, the tornado damaged the Units. After Owner observed the damage on "either July 27th or 28, 2008," he called his insurance agent but "received no answer." That same day, Owner traveled to Insurer's office and reported the damage. Apparently, someone told Owner that "[his] claim was noted in writing and that an adjuster would be contacting [him]." File 2, Tab 16, Appellant Hearing Exhibit A, Page 1 of 2. Later, one of Insurer's agents told Insurer's loss adjuster (Adjuster) that "they did not get a notice called in by [Owner]." File 7, Tab 15, Agency Record, Page 741.

Appellant began harvesting the tobacco on the Units on July 17, 2008, and finished on August 11, 2008. File 2, Tab 15, Agency Record, Page 22. By this time, the Units had not been inspected for the alleged tornado damage.

On August 25, 2008, a tropical storm occurred. It did not damage the tobacco on the Units because the entire crop on those acres already had been harvested. However, the tropical storm damaged tobacco on other units of land that Appellant farmed. On August 26, 2008, Owner filed a written notice of loss with Insurer for the damage from the tropical storm. File 2, Tab 15, Agency Record, Pages 86-87; File 2, Tab 16, Appellant Exhibit A.

Between September 3 and September 5, 2008, Adjuster and RMA representatives inspected Appellant's tobacco cropland for the tropical storm damage. At some point during the inspections, Appellant apparently mentioned that the Units had been damaged previously by the tornado. Some of the RMA inspection field notes included observations about the Units, although they were incorrectly identified. According to the notes, Unit 133 had been harvested prior to the tropical storm; Unit 129 had been partially harvested, but any evidence of tornado was "impossible to discern due to mechanical damage to the remaining stalks." A picture that depicts some portion of the Units shows that the tobacco had been harvested. File 6, Tab 15, Agency Record, Pages 682-685 and 709.

On September 22, 2008, Adjuster gave verbal consent to Appellant to destroy all the tobacco located on its crop land. File 2, Tab 15, Agency Record, Page 29.

In February 2009, RMA requested that Adjuster answer some questions about the alleged tornado damage to the Units "so we can have documentation in the file." With respect to Unit 129, RMA asked whether Appellant had provided notice of the loss because the unit had been harvested completely by the time the inspection for the tropical storm damage had occurred. RMA also asked if notice of the alleged tornado damage had been given in writing, and if Insurer had inspected the unit after notice was given to verify the damage and appraise the crop. File 3, Tab 15, Agency Record, Pages 260-261.

Adjuster responded that prior to August 26, 2008, Appellant had not provided any notice of the alleged tornado damage to the Units. Adjuster explained that during a preliminary inspection on August 26, 2008, for the tropical storm damage, there was no unharvested tobacco on the Units. For the most part, the stalks were intact except for one field and some strips in two other fields that had been harvested with a stripper machine. File 3, Tab 15, Agency Record, Pages 262-263.

By letter dated April 3, 2009, a regional RMA director notified Appellant that indemnities for the alleged tornado damage on the Units would not be paid because a timely notice of loss was not filed, and representative samples of the crop were not left for inspection. According to RMA, Appellant had to provide notice within 72 hours of discovering the tornado damage. However, the first notice that Appellant provided was approximately 28 days after the tornado occurred. File 2, Tab 15, Agency Record, Pages 6-10.

Appellant requested an administrative review of the decision. File 2, Tab 15, Agency Record, Page 26. On November 11, 2009, the RMA Acting Deputy Administrator for Insurance Services (DAIS) determined that the regional decision was not supported. File 2, Tab 15, Agency Record, Pages 15-25. After reviewing the documentation again, however, the DAIS rescinded her initial decision and re-issued a new decision on December 23, 2009. The DAIS found that (1) Appellant did not notify Insurer within 72 hours of the tornado damage; (2) Appellant did not confirm in writing the notice of loss of tornado damage within 15 days; (3) the Units could not have been damaged by the tropical storm because all the tobacco had been harvested prior to the storm; (4) Appellant did not leave representative samples of the tobacco on the Units for inspection; and (5) Appellant did not leave all stalks and stubble intact until either written consent was given to destroy or until 30 days after the end of the insurance period. File 1, Tab 1.

Appellant appealed the adverse decision to NAD. File 1, Tab 2. At a pre-hearing conference before a NAD Hearing Officer on March 9, 2010, Appellant elected a record review. Pre-Hearing Audio at 32:55-36:00. On May 10, 2010, the Hearing Officer issued a determination that affirmed the adverse decision in part and reversed it in part. Specifically, the Hearing Officer found that Appellant did not timely file a notice of loss

on the Units for tornado damage, and that Unit 133 was not damaged by the tropical storm. The Hearing Officer also found that Appellant timely filed a notice of loss on Unit 129 for damage from the tropical storm. File 1, Tab 7. Thereafter, the parties filed requests for Director Review. File 1, Tab 8.

## Legal Standards

Parts 11 and 457 of Title 7 of the Code of Federal Regulations (C.F.R.) contain the regulations applicable to this case. On appeal to NAD, an appellant bears the burden of proving by a preponderance of the evidence that the adverse decision of the agency is erroneous. 7 C.F.R. § 11.8(e).

FCIC offers multi-peril crop insurance to protect an insured against loss of revenue. Approved private insurance companies provide the insurance, which is reinsured by FCIC. RMA manages the FCIC. *See* 7 C.F.R. §§ 457.2 and 457.8 (2004).

Section 14 of FCIC's "Common Crop Insurance Policy" (Insurance Policy) outlines the duties that an insured must fulfill in order to receive a crop insurance indemnity payment. 7 C.F.R. § 457.8(b)(14)(a). Among other things, an insured must notify an insurance agent within 72 hours of his initial discovery of damage (but not later than 15 days after the end of the insurance period), by unit, for each insured crop. 7 C.F.R. § 457.8(b)(14)(a)(2). All notices that must be received within 72 hours may be made by telephone or in person to a crop insurance agent but must be confirmed in writing within 15 days. 7 C.F.R. § 457.8(b)(14)(g). Notices required to be given immediately may be by telephone or in person and confirmed in writing. 7 C.F.R. § 457.8(b)(33)(a).

## Analysis

On review, RMA only challenges the Hearing Officer's determination that the tropical storm damaged Unit 129. The Agency contends that all the tobacco on Unit 129 had been harvested prior to the tropical storm and therefore could not have been damaged by that weather event. The Agency also argues that Appellant was required to leave unharvested, representative strips that were 5 feet wide and extended the entire length of each field in the unit so that Insurer could assess the tornado damage, if any. Appellant responds that it does not agree with the reasoning of the Hearing Officer, but "agrees with the appeal determination" on Unit 129.

Appellant only challenges the Hearing Officer's determination as to Unit 133. Appellant states that at the pre-hearing, the parties stipulated that the only issue is whether "there was compliance with 7 C.F.R. § 457.8(14)(g)." Appellant contends that this stipulation arose from "a statement by the representative of [RMA] . . . that a written document by an employee of the agent was found that showed [Owner] did come by the office that day after the loss to report damage to the crop." Although Appellant "combed the record," he could not locate the document. Nevertheless, Appellant argues that the written document

proves that timely notice was provided. Appellant also contends that written confirmation of the notice is evidenced by Adjuster's special report, dated September 22, 2008, that gave consent to destroy the tobacco stalks. Finally, Appellant states that Owner's affidavit establishes that timely notice was provided. File 1, Tab 8, Appellant Amended Request for Director Review. RMA agrees with the Hearing Officer's determination as to this issue.

With respect to the Agency's argument about Unit 129, I note that Appellant only claims that a tornado damaged the Units. File 2, Tab 16, Appellant Hearing Exhibit A. Thus, the Hearing Officer's conclusion that the tropical storm damaged Unit 129 is incorrect. As such, I reverse that part of the determination that addresses this issue.

Concerning the alleged tornado damage to the Units, I agree with the Hearing Officer that Appellant did not provide timely notice of the loss. Under the Insurance Policy, Appellant had to notify Insurer of the loss within 72 hours of initial discovery of damage (but not later than 15 days after the end of the insurance period), by unit, for each insured crop. 7 C.F.R. § 457.8(b)(14)(a)(2). All notices that had to be received within 72 hours may be made by telephone or in person to a crop insurance agent but had to be confirmed in writing within 15 days. 7 C.F.R. § 457.8(b)(14)(g). Notices required to be given immediately could be by telephone or in person and confirmed in writing. 7 C.F.R. § 457.8(b)(33)(a).

Thus, Appellant had to notify Insurer by telephone or in person within 72 hours of initial discovery of the tornado damage and confirm the loss in writing within fifteen days. *See* 7 C.F.R. § 457.8(b)(14)(a)(2) and 457.8(b)(14)(g). In this case, there simply is no evidence that this occurred. Appellant argues that at the pre-hearing, RMA stated that it found a document generated by Insurer showing that Owner reported the loss in person the day after the tornado occurred. As conceded by Appellant, however, this document is not in the CR. My careful review of the pre-hearing audio reveals that no such statement or stipulation occurred.

Appellant also contends that Adjuster's report of September 22, 2008, wherein he states that he gave verbal consent to Appellant to destroy the tobacco is written confirmation of the loss. The report cannot be construed as written confirmation of a loss to the Units as it provides no information about the cause of loss or the damage. The report does not reference a tornado as a cause of loss, the date of the tornado, or the type of damage; there also is no specific reference to the Units in the report.

Owner's affidavit also does not show that timely notice was provided. According to Owner, he observed damage on "either July 27th or 28, 2008" and called his insurance agent but "received no answer." That same day, Owner reported the damage at Insurer's office and was told that "[his] claim was noted in writing and that an adjuster would be contacting [him]." There is no evidence in the CR to corroborate these assertions. The Hearing Officer found that Appellant did not notify Insurer of the tornado damage until

late August. Insurer stated that Appellant "did not get a notice called in" after the tornado occurred. And there are no documents generated by Insurer that show that Owner visited the office that day, or that the claim was "noted" in writing.

In short, the substantial evidence in the record shows that Appellant did not notify Insurer in person or by telephone within 72 hours of initial discovery of the tornado damage and did not confirm the loss in writing within fifteen days. *See* 7 C.F.R. § 457.8(b)(14)(a)(2) and 457.8(b)(14)(g).

### Conclusion

Based on the discussion above, I uphold the Hearing Officer's Determination that Appellant did not timely file a notice of loss on the Units for tornado damage, and that Unit 133 was not damaged by the tropical storm. I reverse the Hearing Officers' Determination that the tropical storm damaged Unit 129. Appellant did not prove by a preponderance of the evidence that the adverse decision was erroneous.

_____          9/8/10
M. TERRY JOHNSON                          DATE
Deputy Director